*888 SILVERMAN, Circuit Judge,
dissenting:
The plaintiff is the owner of a copyright in a fixed sound recording. This is a valuable property right, the stock-in-trade of artists who make their living recording music and selling records. The plaintiff alleges that the defendants, without a license or any sort of permission, physically copied a small part of the plaintiffs sound recording — which, to repeat, is property belonging to the plaintiff — and, having appropriated it, inserted into their own recording. If the plaintiffs allegations are to be believed, the defendants deemed this maneuver preferable to paying for a license to use the material, or to hiring their own musicians to record it. In any other context, this would be called theft. It is no defense to theft that the thief made off with only a “de minimis” part of the victim’s property.
The majority chooses to follow the views of a popular treatise instead of an on-point decision of the Sixth Circuit, a decision that has governed the music industry in Nashville — “Music City” [1]— and elsewhere for over a decade without causing either the sky to fall in, or Congress to step in. And just exactly what is the Sixth Circuit’s radical holding in Bridgeport Music, Inc. v. Dimension Films that the majority finds so distasteful? It’s this: if you want to use an identical copy of a portion of a copyrighted fixed sound recording — we’re not talking about “substantially similar” tunes or rhythms, but an actual identical copy of á sound that has already been recorded in a fixed medium' — get a license. You can’t just take it. 410 F.3d 792, 800-01 (6th Cir. 2005).
As the majority acknowledges, after Newton v. Diamond, 388 F.3d 1189 (9th Cir. 2003), it is an “open question” in the Ninth Circuit whether a de minimis defense applies to fixed sound recordings as it does to less tangible works. The Bridgeport court explained why it should not.
First, by statute, sound recording copyright holders have an exclusive right to sample their oum recordings. It’s an exclusive right; the statute does not give that right to others. 410 F.3d at 800-01. Under 17 U.S.C. §§ 106 and 114, the holder of a copyright in a sound recording (but not others) has the. exclusive right to reproduce the work in copies or records “that directly or indirectly recapture the actual sounds fixed in the recording,” as well as the exclusive right to prepare derivative works “in which the actual sounds fixed in the sound recording are rearranged, remixed, or otherwise altered in sequence or quality.” 17 U.S.C. §§ 106(1) and (2); 114(b). Congress clearly qualified these exclusive rights, writing that “another sound recording that consists entirely of an independent fixation of other sounds, even though such sounds imitate or simulate those in the copyrighted sound recording” are not within the scope of the copyright holder’s exclusive rights. 17 U.S.C. § 114(b). In other words, the world at large is free to imitate or simulate the creative work fixed in the recording (like a tribute band, for example) so long as an actual copy of the sound recording itself is not made. 410 F.3d at 800.
The majority rejects this straightforward reading, explaining by way of a rhetorical exercise that Bridgeport’s reading of § 114(b) is a logical fallacy, expanding the rights of copyright holders beyond that allowed under the judicial de minimis rule. As I see it, it is the majority that tortures *889 the natural reading of these provisions. Bear in mind that § 114(b) simply explains the scope of exclusive rights already granted to copyright holders under § 106. These two provisions must be read together, as the Sixth Circuit did. 410 F.3d at 799-801. When read together, their message is clear: copyright holders have exclusive rights to their recordings, but cannot ■ be heard to complain (i.e., there can be no infringement of those exclusive rights) where a new recording consists entirely of independently created sounds, such as might be found in a very good imitation. By the same token, if a new recording includes something other than independently created sounds, such as a blatant copy, the copyright holder whose work was sampled has a legitimate gripe. That right was not invented by the Sixth Circuit: it already exists in the statutes. And these statutes say nothing about the de minimis exception.
The second reason the Sixth Circuit gave for not adopting the de minimis rule is that sound recordings are different than their compositional counterparts: when a defendant copies a recording, he or she takes not the song but the sounds as they are fixed in the medium of the copyright holders’ choice. Id. at 801-02. In other words, the very nature of digital sampling makes a de minimis analysis inapplicable, since sampling or pirating necessarily involves copying a fixed performance. See id. at 801 n.13. The defendants wanted horns to punctuate their song, so they took the plaintiffs copyrighted recording of horns. The horn hit is brief, but clearly perceptible and does its job. This is unlike indiscernible photographs used, not for' their content (which cannot be made out), but to dress a movie set. See Sandoval v. New Line Cinema Corp., 147 F.3d 215, 218 (2d Cir. 1998).
This is a physical taking, not an intellectual one. Id. at 802. Sampling is never accidental. Id. at 801. As the Sixth Circuit observed, it is not like the case of a composer who has a melody in his head, perhaps not even realizing that the reason he hears this melody is that it is the work of another that he has heard before. Id. When you sample a sound recording you know you are taking another’s work product. Id. Accordingly, the pertinent inquiry in a sampling case is not whether a defendant sampled a little or a lot, but whether a defendant sampled at all. Id. at 798 n.6, 801-02 and n.13.
Again, the majority disagrees, rejecting Bridgeport’s characterization of a sample as a “physical taking” on the basis that copyright protection extends only to expressive aspects of a work, not the fruit of the author’s labor. According to the majority, copyright protection doesn’t extend to the sweat of an author’s brow. Feist Publ’ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 349, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991) (discussing originality as applied to factual compilations, such as telephone directories). But that’s irrelevant here, since there is no question that the underlying sound recording can be copyrighted, and it is the taking of that protect-able work that is at issue.
I find Bridgeport’s arguments well-reasoned and persuasive. Equally compelling is, I think, Congress’s silence in the wake of Bridgeport, especially in light of the fact that the Sixth Circuit explicitly invited Congress to clarify or change the law if Bridgeport’s bright-line rule was not what Congress intended. 410 F.3d at 805. While it’s true that congressional inaction in the face of judicial interpretation is not ironclad evidence of Congressional approval, see Alexander v. Sandoval, 532 U.S. 275, 292, 121 S.Ct. 1511, 149 L.Ed.2d 517 (2001), it’s not chopped liver either. In this case Bridgeport has not been hiding out in the woods, waiting to be found: it has been governing the music industry in Nashville *890 and elsewhere for eleven years. The majority now proposes to introduce a different rule for this circuit, creating a circuit split, and providing a lower level .of protection for copyright holders in a different area of the country. See Seven Arts Filmed Entertainment Ltd. v. Content Media Corp. PLC, 733 F.3d 1251, 1256 (9th Cir. 2013). This inconsistent approach is plainly in contravention of Congressional intent that copyright laws be predictable and uniform, yet the majority defends its rogue path on the ground that Congress must have intended something other than what the Sixth Circuit has concluded, even though we’ve heard not a peep from Congress, or for that matter the Supreme Court, in the eleven years since Bridgeport has been on the books.
In short, the majority’s fuzzy approach would require a factual and largely visceral inquiry into whether each and every instance of sampling was “substantial,” whereas Bridgeport provides in the case of a fixed sound recording a bright-line rule, and I quote: “Get a license or do not sample.” 410 F.3d at 801. True, Get a license or do not sample doesn’t carry the same divine force as Thou Shalt Not Steal, but it’s the same basic idea. I would hold that the de minimis exception does not apply to the sampling, copying, stealing, pirating, misappropriation — call it what you will — of copyrighted fixed sound recordings. Once the sound is fixed, it is tangible property belonging to the copyright holder, and no one else has the right to take even a little of it without permission. I therefore respectfully dissent.[2]

. Nashville also describes itself as the "Songwriting Capital of the World.” See The Story of Music City, Nashville Convention & Visitors Corp., http://www.visitmusiccity.com/ visitors/aboutmusiccity/storyofmusiccity (last visited May 20, 2016).

. Since I think that summary judgment was improperly granted on the plaintiff's sampling claims, I also would reverse the award of attorneys’ fees. However, I agree with the majority that the fee award was erroneous in any event. I also agree that the district court properly granted summary judgment on the plaintiff's composition infringement claim.