**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

RICHARD N. BELL,
                    *Plaintiff-Appellant*,

v.

WILMOTT STORAGE SERVICES, LLC,
                    *Defendant-Appellee.*

No. 19-55882

D.C. No.
2:18-cv-07328-
CBM-MRW

RICHARD N. BELL,
                    *Plaintiff-Appellee*,

v.

WILMOTT STORAGE SERVICES, LLC,
                    *Defendant-Appellant*,

and

ROE CORPORATIONS; IADVANTAGE,
LLC; DOES,
                    *Defendants.*

No. 19-56181

D.C. No.
2:18-cv-07328-
CBM-MRW

OPINION

Appeal from the United States District Court
for the Central District of California
Consuelo B. Marshall, District Judge, Presiding

Argued and Submitted August 13, 2020
Pasadena, California

Filed September 9, 2021

Before: Kim McLane Wardlaw and Richard R. Clifton,
Circuit Judges, and Jennifer Choe-Groves,* Judge.

Opinion by Judge Wardlaw;
Concurrence by Judge Clifton;
Concurrence by Judge Choe-Groves

---

* The Honorable Jennifer Choe-Groves, Judge for the United States Court of International Trade, sitting by designation.

# SUMMARY[**]

## Copyright

The panel reversed the district court's grant of summary judgment in favor of the defendant based on a putative de minimis use defense in a copyright case, and remanded for consideration of remaining defenses and damages issues.

The panel held that the concept of de minimis copying is properly used to analyze whether so little of a copyrighted work has been copied that the allegedly infringing work is not substantially similar to the copyrighted work and is thus non-infringing.  However, once infringement is established, that is, ownership and violation of one of the exclusive rights in copyright under 17 U.S.C. § 106, de minimis use of the infringing work is not a defense to an infringement action.

Plaintiff Richard Bell alleged that Wilmott Storage Services, LLC, infringed his copyright in a photograph of the Indianapolis skyline.  The panel concluded that Wilmott publicly displayed the photo on its website, even though the photo was accessible only to members of the public who either possessed the specific pinpoint address or who performed a particular type of online search, such as a reverse image search. Applying the *Perfect 10* "server test," the panel reasoned that Wilmott's server was continuously transmitting the image to those who used the specific pinpoint address or were conducting reverse image searches using the same or similar photo.  Thus, Wilmott transmitted,

---

[**] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

and therefore displayed, the Indianapolis photo without Bell's permission.  The panel further concluded that Wilmott's display was public by virtue of the way it operated its servers and its website.

Having concluded that Wilmott publicly displayed the Indianapolis photo, the panel wrote that it would ordinarily ask whether the infringing work was substantially similar to the copyrighted work.  Here, however, the panel concluded that the "degree of copying" was total because the infringing work was an identical copy of the copyrighted Indianapolis photo.  Accordingly, there was no place for an inquiry as to whether there was de minimis copying, and thus no infringement.  Agreeing with other circuits, the panel wrote that the Ninth Circuit has consistently applied the de minimis principle to determine whether a work is infringing by analyzing the quantity and quality of the copying to determine if the allegedly infringing work is a recognizable copy of the original work, in other words, whether the works are substantially similar.  The panel wrote that the Ninth Circuit has never recognized a de minimis defense based on the allegedly minimal use of concededly infringing material. The panel thus rejected Wilmott's "technical violation" theory of a de minimis defense adopted by the district court.

The panel reversed the district court's grant of summary judgment.  Because the panel held that Wilmott was not entitled to judgment on its de minimis defense, the panel also vacated the district court's denial of Wilmott's motion for attorney's fees.  Accordingly, the panel dismissed Wilmott's cross-appeal as moot.

Concurring, Judge Clifton, joined by Judge Wardlaw, wrote that he joined fully in the opinion.  He wrote separately to discourage Bell's further pursuit of his copyright claims

given the circumstances, including Bell's filing of many other copyright suits and the fact that his claims were based on a copyright that might not belong to him.

Concurring in part, Judge Choe-Groves wrote that she agreed with the majority that the de minimis concept was not a defense for Wilmott's wholesale copying and with the majority's result vacating the grant of summary judgment and remanding. Judge Choe-Groves wrote that she would remand for the district court to first consider the threshold question of whether Bell owns the copyright in the Indianapolis photo, with consideration of the jury verdict in a related case, and to address Wilmott's alleged violation and defenses only if the district court finds valid copyright ownership.

## COUNSEL

Gregory Keenan (argued), Digital Justice Foundation, Floral Park, New York; Andrew Grimm, Digital Justice Foundation, Omaha, Nebraska; Ryan A. Hamilton, Hamilton Law LLC, Las Vegas, Nevada; for Plaintiff-Appellant/Appellee.

Paul D. Supnik (argued), Law Office of Paul D. Supnik, Beverly Hills, California, for Defendant-Appellee/Appellant.

**OPINION**

WARDLAW, Circuit Judge:

We write to clarify the role that de minimis copying plays in statutory copyright. The de minimis concept is properly used to analyze whether so little of a copyrighted work has been copied that the allegedly infringing work is not substantially similar to the copyrighted work and is thus non-infringing. However, once infringement is established, that is, ownership and violation of one of the exclusive rights in copyright under 17 U.S.C. § 106, de minimis use of the infringing work is not a defense to an infringement action. Because the district court held to the contrary, we reverse the judgment, and remand for consideration of the remaining defenses and damages issues.[1]

**I.**

This appeal comes to us on a motion for summary judgment. We therefore review the district court's grant of summary judgment de novo, viewing the evidence in the light most favorable to the non-moving party and drawing all reasonable inferences in its favor. *Range Rd. Music, Inc. v. E. Coast Foods, Inc.*, 668 F.3d 1148, 1152 (9th Cir. 2012).

---

[1] Wilmott cross-appeals the district court's denial of its motion for attorneys' fees and costs, based on its status as the prevailing party. Because we hold that Wilmott was not entitled to judgment on its de minimis defense, we also vacate and remand the district court's denial of Wilmott's motion for attorney's fees. Wilmott's cross-appeal, No. 19-56181, is therefore dismissed as moot.

### A.

Richard Bell took the landscape photograph of the Indianapolis skyline (the "Indianapolis photo"), reprinted below, in March or May of 2000.[2]



At the time the Indianapolis photo was taken, Bell worked as an attorney for the Indianapolis law firm Cohen & Malad, and the photo was posted on the firm's official website at some point. *Bell v. Carmen Com. Real Est. Servs.*, No. 1:16-cv-01174-JRS-MPB, 2020 WL 5016891, at *1 (S.D. Ind.

---

[2] There is some doubt about the exact date of the photo's creation. *See Bell v. Davis*, 430 F. Supp. 3d 718, 720 (D. Or. 2019) ("Plaintiff Bell testified that he took the skyline photograph in March or May of 2000."). And, although in this appeal the parties do not dispute that Bell took the Indianapolis photo, his authorship and ownership of the copyright in the photo have been questioned elsewhere.

Aug. 25, 2020).[3]  Bell first published the Indianapolis photo on "Webshots.com" on August 29, 2000.  But he did not register the Indianapolis photo with the United States Copyright Office until eleven years later, on August 4, 2011. Bell also published the photo on his online photo gallery "richbellphotos.com," from which Bell commercially licenses the use of his photographs.

In 2018, in an effort to monitor infringing uses of his photo, Bell ran a reverse image search[4] on Google Images using the Indianapolis photo.  Bell frequently uses reverse image searches to identify potential infringers, and he has filed over 100 copyright infringement lawsuits concerning the Indianapolis photo, a number that exceeds 200 when combined with suits concerning a different photo that he took of the Indianapolis skyline.  *Davis*, 430 F. Supp. 3d at 721 & n.1 (citing *Bell v. Barber*, No:18-cv-01491, 2019

---

[3] We take judicial notice of this proceeding.  We "may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b)(2).  The court "may take notice of proceedings in other courts . . . if those proceedings have a direct relation to matters at issue."  *United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992) (quoting *St. Louis Baptist Temple, Inc. v. FDIC,* 605 F.2d 1169, 1172 (10th Cir. 1979)) (taking notice of the judgment and related filings).

[4] A reverse image search is a search in which a user inputs a web address or copy of an image, and the search engine returns a list of locations on the Internet that contain a copy of the image or a similar but slightly modified one, *e.g.*, the identical image with a person edited into the background.  Thus, a reverse image search uses an image to find either copies of the image, or other similar images on the Internet, in much the same way that a search of a string of text finds webpages that include that string of text.  *See* Santi Thompson & Michele Reilly, *A Picture Is Worth a Thousand Words*, 68 J. Ass'n for Info. Sci. & Tech. 2264, 2264–65 (2017).

WL 4467955, *1 n.1 (S.D. Cal. Sept. 16, 2019)).  Through one of these Google searches, Bell found the Indianapolis photo on a server database associated with the website VisitUSA.com.  The average Internet user would not have been able to access the photograph by going to VisitUSA.com and navigating the options available on the website.  Rather, the image was only accessible to those users who conducted a reverse image search—as Bell had—or those who knew the precise address of the image database archiving the photograph, http://www.visitusa.com/images/ states/alabama/cities/mobile/park.jpg  (hereinafter,  the "pinpoint address"), last seen on or around April 16, 2018, when the file was purportedly removed.[5]

In 2012, Wilmott Storage Services, LLC purchased the VisitUSA.com website from a third party, and, in 2014, hired another company to update the website to generate more traffic and advertising revenue.  The Indianapolis photo existed on the server hosting VisitUSA.com at least as early as December 23, 2014, when Wilmott launched the newly updated website, and it was likely present when Wilmott originally acquired the website.

On April 7, 2018, Bell notified Wilmott that it was displaying the Indianapolis photo without his permission. Before this, Wilmott was unaware that the photo was on its server, but Wilmott removed the photo from the original pinpoint address in response to Bell's request.

However, in March of 2019, one year after Bell's initial request and six months after Bell brought this lawsuit,

---

[5] By the web address listing, the photo was apparently incorrectly identified as depicting the skyline of Mobile, Alabama rather than Indianapolis, Indiana.

Wilmott continued to display a copy of the Indianapolis photo on its server, now at a slightly different pinpoint address than before.[6]  To explain this discrepancy, Wilmott argues that it had attempted to remove the Indianapolis photo located at the pinpoint address identified by Bell, but the webmaster Wilmott tasked with the photo's removal appears to have only changed the file name (from "park.jpg" to "park_yyy.jpg"), rather than remove it completely.  Bell requested that Wilmott remove this copy of the Indianapolis photo as well, and Wilmott did so.

It is undisputed that Bell never licensed or otherwise permitted Wilmott to display the Indianapolis photo.

### B.

Bell sued Wilmott for copyright infringement in 2018. Both parties subsequently filed cross-motions for summary judgment.  Assuming infringement of Bell's copyright for purposes of summary judgment, Wilmott argued for judgment based on the affirmative defenses of de minimis use, fair use, and the statute of limitations.

The district court granted summary judgment to Wilmott on the de minimis use defense and therefore did not reach either the fair use or the statute of limitations defenses. Although Wilmott conceded that an identical copy of the Indianapolis photo was hosted on its server, the district court found no infringement, relying on *Knickerbocker Toy Co. v. Azrak-Hamway Int'l, Inc*., 668 F.2d 699 (2d Cir. 1982), and misreading the controlling Ninth Circuit cases regarding de

---

[6]    Specifically,    this    copy    was    located    at http://www.visitusa.com/images/states/alabama/cities/mobile/park_yyy. jpg, last seen on March 10, 2019, when the file was removed.

minimis copying. Like Wilmott, the district court assumed the validity of Bell's copyright interest for purposes of the decision on summary judgment.[7] The district court then concluded that Wilmott's use of the Indianapolis photo was

---

[7] This assumption was not error. The text of the Copyright Act does not require the district court to consider dispositive issues in any particular order or at all. We have routinely assumed the validity of the copyright at issue before addressing a separate, but no less dispositive, issue. *See*, *e.g.*, *Rachel v. Banana Republic, Inc.*, 831 F.2d 1503, 1507 (9th Cir. 1987) ("We need not decide whether [the plaintiff's] copyright is valid. Even assuming its validity, we agree with the district court that no infringement of the copyright occurred."); *Cooling Sys. & Flexibles, Inc. v. Stuart Radiator, Inc.*, 777 F.2d 485, 491 (9th Cir. 1985), *overruled on other grounds by Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*, 959 F.3d 1194, 1198 (9th Cir. 2020). Of course, any claim of copyright infringement requires the plaintiff to own a valid copyright. *See Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). But we have never precluded district courts from assuming the validity of a copyright interest for purposes of determining another dispositive issue.

Other circuits also routinely assume a valid ownership interest in order to address another clearly dispositive issue. *See Swatch Grp. Mgmt. Servs. Ltd. v. Bloomberg L.P.*, 756 F.3d 73, 92 (2d Cir. 2014) (affirming summary judgment "on the ground of fair use without reaching the issue of copyrightability"); *Bridgmon v. Array Sys. Corp.*, 325 F.3d 572, 576 n.6 (5th Cir. 2003) ("We need not reach [the question of validity] and will assume arguendo that his copyright was valid."); *Korman v. HBC Fla.*, *Inc.*, 182 F.3d 1291, 1293 n.1 (11th Cir. 1999) ("The district court assumed that Korman possessed a valid copyright. Without conceding the issue, HBC made the same assumption in its brief to us, and we, too, will assume for present purposes that Korman has a valid copyright in the jingle."); *Miner v. Emps. Mut. Liab. Ins. Co. of Wis.*, 229 F.2d 35, 35 (D.C. Cir. 1956) ("[T]he district court did not pass, and we find it unnecessary to pass, upon the validity of plaintiff's copyrights. The court correctly concluded 'that assuming that plaintiff's copyrights are valid, there has been no infringement thereof by defendant.'").

so insubstantial as to constitute a mere "technical" or de minimis violation that was not actionable as a matter of law.

## II.

To establish a prima facie case of direct copyright infringement, Bell must show that he owns the copyright, and that Wilmott violated one of the exclusive rights in copyright set forth in 17 U.S.C. § 106. *See A&M Recs., Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 (9th Cir. 2001); 17 U.S.C. § 501(a) (infringement occurs when the alleged infringer engages in activity listed in § 106). Though there is no serious dispute as to whether Bell originally took the Indianapolis photo, the validity of Bell's copyright in the photo has been called into question in other cases while this appeal was pending. *See, e.g., Davis*, 430 F. Supp. 3d at 720; *Carmen Com.*, 2020 WL 5016891, at *1 (noting that "[t]he jury found that Bell did not prove that he authored the Indianapolis Skyline Photo, that he owns a copyright in it, and that he registered it with the Copyright Office" after the defendant argued it was a work made for hire); *but see Bell v. Maloney*, 1:16-cv-01193-RLY-DLP-ECF No. 86, at *20 (S.D. Ind. May 23, 2019) (finding that the photo was not a work made for hire and that Bell is the valid copyright owner). Because the district court did not have an opportunity to decide what preclusive effect (if any) should be given to those cases, we limit our discussion to the grounds on which the district court relied, and which the parties adequately presented before us.[8]

---

[8] Following developments in *Carmen* that arose after this case was argued and submitted, we requested supplemental briefing from the parties regarding whether a limited remand would be appropriate for the district court to decide in the first instance whether Bell is the valid

Bell asserts that Wilmott infringed his right "to display the copyrighted work publicly," 17 U.S.C. § 106(5), by making it accessible to the public on its server, where Bell found it "displayed" after running a reverse image search. He further contends that once he has demonstrated infringement of his public display right, a de minimis use defense is not available to Wilmott.

## A.

"Under the Copyright Act, the owner of a copyright has the exclusive right to display its work." *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 668 (9th Cir. 2017) ("*Giganews*"). On appeal, Bell argues that Wilmott violated his exclusive right to publicly display the Indianapolis photo by "displaying" the photo on its server. Although we have addressed this issue in the context of websites, *Perfect 10, Inc. v. Amazon, Inc.*, 508 F.3d 1146 (9th Cir. 2007) ("*Perfect*

---

owner of the copyright in the Indianapolis photo and the preclusive effect, if any, of the jury verdict in *Carmen* on this case. *See*, *e.g.*, *Davis*, 430 F. Supp. 3d at 720. In response, the parties filed a joint letter brief opposing a limited remand and requesting that we not elide the de minimis infringement question. After considering their response, we declined to order a limited remand, particularly in light of: (1) the numerous, complex questions that issue preclusion might pose, some of which may generate an appeal of their own and after which the parties may return to us with the same de minimis arguments; (2) Wilmott's likely waiver of issue preclusion arguments on appeal by both failing to raise them in briefing and effectively disclaiming them during oral argument; and (3) the principle of party presentation, which counsels us to "normally decide only questions presented by the parties." *United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1579 (2020). In addition, Bell has twice appealed the *Carmen* decision, the second of which appeals remains pending, *Carmen Com.*, No. 1:16-cv-01174-JRS-MPB, *appeal dismissed*, No. 20-2902 (7th Cir. Apr. 23, 2021), *appeal pending*, No. 21-1851 (7th Cir. May 13, 2021).

*10*"), we have yet to address the issue of whether one "publicly displays" a work where it is accessible only to members of the public who either possess the specific pinpoint address or who perform a particular type of online search—here a reverse image search.

The Copyright Act (the "Act") explains that:

> To perform or display a work "publicly" means—
>
> > (1) to perform or display it at a place open to the public . . . ; or
> >
> > (2) to transmit or otherwise communicate a performance or display of the work to a place specified by clause (1) or to the public, by means of any device or process . . . .

17 U.S.C. § 101. In *Perfect 10*, we concluded that, "based on the plain language of the statute, a person displays a photographic image by using a computer to fill a computer screen with a copy of the photographic image fixed in the computer's memory." 508 F.3d at 1160. In that case, Perfect 10 sued Google, along with Amazon and other companies, for infringing Perfect 10's copyrighted images of nude models through its Google Image search engine. *Id*. at 1155–57. In response to a user's search, Google indexed the webpages with responsive images, displayed an indexed list of smaller versions of these images, *i.e.*, "thumbnails," and linked those thumbnails to third-party websites displaying the full-sized image. *Id*. at 1156. Google stored these thumbnail images on its servers. *Id*. at 1155. At no point

did Perfect 10 authorize Google to display its copyrighted images. *Id*. at 1159.

Given Perfect 10's exclusive right as the copyright holder of its images "to display the copyrighted work publicly," we analyzed whether or not Google's listing of thumbnail images in response to a potential search violated Perfect 10's display rights. *Id.* at 1160 (quoting 17 U.S.C. § 106(5)). Because "[t]he Copyright Act explains that 'display' means 'to show a copy of it, either directly or by means of a film, slide, television image, or any other device or process,'" *id*. at 1160 (quoting 17 U.S.C. § 101), we held that "based on the plain language of the statute, a person displays a photographic image by using a computer to fill a computer screen with a copy of the photographic image fixed in the computer's memory," *id*.; *see also* 17 U.S.C. § 101 (defining "[t]o 'transmit' a performance or display" as "communicat[ing] it by any device or process whereby images or sounds are received beyond the place from which they are sent."). Thus, because "Google's computers store thumbnail versions of Perfect 10's copyrighted images and communicate copies of those thumbnails to Google's users" and because Google and other webpages were generally available to the public, we concluded that Google's generated list of thumbnails constituted a public display. *Perfect 10*, 508 F.3d at 1160. In so doing, we adopted the district court's so-called "server test" regarding public displays of protected works online: "a computer owner that stores an image as electronic information and serves that electronic information directly to the user ('i.e., physically sending ones and zeroes over the [I]nternet to the user's browser') is displaying the electronic information in violation of a copyright holder's exclusive display right." *Id.* at 1159 (citation omitted); *see also Giganews,* 847 F.3d at 668 (reaffirming the server test). Therefore, we held that

Perfect 10 had made a prima facie case that Google infringed Perfect 10's exclusive right to publicly display its copyrighted works. *Perfect 10*, 508 F.3d at 1160.

Applying the reasoning of *Perfect 10* to this case, we conclude that Wilmott publicly displayed the Indianapolis photo. Although a member of the public could not access the photo by simply visiting Wilmott's website, applying the server test, Wilmott's server was continuously transmitting the image to those who used the specific pinpoint address or were conducting reverse image searches using the same or similar photo. If any user had visited the pinpoint address for the Indianapolis photo, under either of its file names, Wilmott's server—where it is undisputed the photos were stored—would transmit that photo to the user, where the photo would "fill [the user's] computer screen with a copy of the [Indianapolis photo] fixed in the computer's memory." *Id.* at 1160. Thus, Wilmott transmitted, and therefore displayed, the Indianapolis photo without Bell's permission, and Wilmott is simply incorrect to assert that it "did not provide the ability to see [the Indianapolis photo]."

Wilmott's display was also public by virtue of the way Wilmott operated its servers and its website, www.VisitUSA.com. Wilmott's server transmitted the Indianapolis photo to any member of the public who used the pinpoint address or a reverse image search. It is undisputed the Indianapolis photo was accessible to members of the public, both before and after the specific file was possibly renamed, but only if an individual knew how to access it. As Bell notes, that he was able to locate his photo by using a reverse image search means that "reverse image search companies had already received Wilmott's public display before Mr. Bell discovered it," and thus the photo was already publicly displayed.

Wilmott makes much of the fact that Google never indexed the Indianapolis photo, so that the photo would not appear in response to a Google text search for images related to "Indianapolis," which would have made it much more likely that members of the public would have come across the image.  By displaying the Indianapolis photo on a server that was publicly accessible to anyone with an Internet connection, however, Wilmott publicly displayed the photo, *see* 17 U.S.C. § 106(5), regardless of whether or not any particular person actually found and viewed it.  In *Perfect 10*, we had no trouble concluding that Google's list of thumbnails gave rise to a prima facie case of infringement of Perfect 10's exclusive display right without requiring proof that users had in fact accessed the photos.  508 F.3d at 1160.  As in *Perfect 10*, Bell does not need to prove there was some minimum number of users who in fact accessed the Indianapolis photo to make out a prima facie case of infringement.  *See id.* at 1159.  The Copyright Act does not require proof that the protected work was actually viewed by anyone.  Rather, the Act defines "publicly" to merely require that the display be at "a place *open* to the public," 17 U.S.C. § 101 (emphasis added), thereby readily encompassing any publicly accessible server like Wilmott's.  Indeed, a public transmission of a work includes transmissions to the public even when "there is no proof that . . . any people were in fact operating their respective receiving apparatus at the time of transmission of a given work."  2 M. Nimmer & D. Nimmer, Copyright, § 8.14[C][2] (2019) (hereinafter Nimmer on Copyright).  In the analogous context of public performance, it is "not necessary" that the public "in fact attend or receive the performance."  *Id.*; *see also* H.R. Rep. 94-1476, at 64–65 (1976) (same).

### B.

Having concluded that Wilmott publicly displayed the Indianapolis photo, we would ordinarily ask whether the infringing work was substantially similar to the copyrighted work.  Copying is only actionable if the "defendant's work is substantially similar to [the copyrighted work] (and is the product of copying rather than independent effort)." 2 Nimmer on Copyright § 8.01[G].  In other words, "even where the fact of copying is conceded, no legal consequences will follow from that fact unless the copying is substantial." 4 Nimmer on Copyright § 13.03[A].  Here, the "degree of copying" was total—the infringing work was an identical copy of the copyrighted Indianapolis photo. There is thus no place for an inquiry as to whether there was de minimis copying.  As Professor Nimmer explains, "[i]f such duplication is literal or verbatim, then clearly substantial similarity exists."  *Id.* § 13.03[A][1].  On the other hand, if the degree of copying is merely de minimis, then it is non-actionable.

Our circuit and the majority of our sister circuits do not view the de minimis doctrine as a defense to infringement, but rather as an answer to the question of whether the infringing work and the copyrighted work are substantially similar so as to make the copying actionable.  We first articulated this principle in *Fisher v. Dees*, 794 F.2d 432 (9th Cir. 1986).  In that case, Marvin Fisher and Jack Segal, the composers and copyright owners of the song "When Sunny Gets Blue," sued Rick Dees, a DJ, and others, for copyright infringement stemming from Dees's release of a parody song entitled "When Sonny Sniffs Glue." *Id*. at 434.  Specifically, Dees's parody "copie[d] the first six of the [original's] thirty-eight bars of music—its recognizable main theme," and it also changed the opening lyrics from "When Sunny

gets blue, her eyes get gray and cloudy, then the rain begins to fall" to "When Sonny sniffs glue, her eyes get red and bulgy, then her hair begins to fall." *Id*. Although the case was resolved on the grounds of fair use, Dees argued on appeal that his "taking from the [original] song was de minimis and thus not violative of the composers' copyright." *Id*. at 434 n.2.

We rejected Dees's argument "out of hand" because the parody was "an obvious take-off." *Id*. at 434 & n.2. We noted that "the appropriation would be recognized instantly by anyone familiar with the original," and thus the parody was substantially similar to the original work. *Id*. at 434 n.2. We also noted that "[a]s a rule, a taking is considered de minimis only if it is so *meager* and *fragmentary* that the average audience member would not recognize the appropriation," *i.e.*, the works could not be said to be substantially similar. *Id.* (emphasis added) (citing *Elsmere Music, Inc. v. Nat'l Broad. Co.*, 482 F. Supp. 741, 744 (S.D.N.Y. 1980), *aff'd per curiam*, 623 F.2d 252 (2d Cir. 1980)). We even went on to cast doubt on the notion that copying "for parodic purposes" could ever constitute de minimis copying as a "parody is successful only if the audience makes the connection between the original and its comic version," a connection that requires the parody artist to "appropriate a substantial enough portion of it to evoke recognition." *Id*.

We next addressed de minimis copying in a pair of cases—*Newton v. Diamond*, 388 F.3d 1189 (9th Cir. 2004) and *VMG Salsoul, LLC v. Ciccone*, 824 F.3d 871 (9th Cir. 2016)—both of which, like *Fisher*, involved alleged copying of protected musical works. In both *Newton* and *VMG Salsoul*, we addressed whether "sampling," a method by which musicians incorporate "a short segment of a musical

recording into a new musical recording," could constitute copyright infringement. *Newton*, 388 F.3d at 1190; *see also VMG Salsoul*, 824 F.3d at 875.

In *Newton*, the accomplished jazz flutist James Newton sued the Beastie Boys for copyright infringement based on the musical group's unauthorized digital sampling of "a six-second, three-note segment" from one of Newton's protected compositions. 388 F.3d at 1190. Although we stated that the Beastie Boys' "use" of a portion of Newton's musical work was de minimis and therefore non-actionable, we intended "use" in this context to connote the amount of copying. *Id.* at 1193. Citing *Fisher*, we underscored that "a use is de minimis only if the average audience would not recognize the appropriation," an observation that "reflects the relationship between the de minimis maxim and the general test for substantial similarity, which also looks to the response of the average audience, or ordinary observer, to determine whether a use is infringing." *Id*. (citing *Fisher*, 794 F.2d at 434 n.2). This meant that "even where the fact of copying is conceded, no legal consequences will follow from that fact unless the copying is substantial." *Id*. (citing *Laureyssens v. Idea Grp., Inc.*, 964 F.2d 131, 140 (2d Cir. 1992)); *see also* 4 Nimmer on Copyright § 13.03[A].

Thus, we concluded that despite the "high degree of similarity between the works" in *Newton* (the Beastie Boys directly copied a three-note sequence from Newton's song), the "limited scope of the copying" placed Newton's copyright infringement claim into the realm of "fragmented literal similarity." *Id*. at 1195 (quoting 4 Nimmer on Copyright § 13.03[A][2]). In such cases, the key question is "whether the copying goes to trivial or substantial elements," *i.e.*, whether the works are substantially similar. *Id*.; *see also id.* ("Substantiality is measured by considering the

qualitative and quantitative significance of the copied portion in relation to the plaintiff's work as a whole."). Applying this test to the Beastie Boys' song, we concluded that "no reasonable juror could find the sampled portion of the composition to be a quantitatively or qualitatively significant portion of the composition as a whole" and the works were substantially dissimilar. *Id*. at 1195–96. Thus, the Beastie Boys had engaged in only non-actionable, de minimis copying. *Id*. at 1196.

We reaffirmed *Newton* in *VMG Salsoul*, which involved a claim for copyright infringement based on the use of a "0.23-second segment of horns" from the plaintiff's protected musical work by Madonna in her hit song, "Vogue." *VMG Salsoul*, 824 F.3d at 874. Noting the extreme brevity of the copied portion at issue relative to the six-second portion in *Newton*, we held that "a reasonable jury could *not* conclude that an average audience would recognize an appropriation of the [plaintiff's] composition," therefore rendering the works substantially dissimilar. *Id*. at 879.

We reiterated that the de minimis concept applies to the amount or substantiality of the copying—and not the extent of the defendant's use of the infringing work—in *Design Data*. *See* 847 F.3d at 1172. There, the defendant "intentionally downloaded a complete copy of [plaintiff's computer program]." *Id*. The district court granted summary judgment to the defendant because there was no evidence that the defendant installed or used the program, concluding that the infringement was de minimis and non-actionable. *Design Data Corp. v. Unigate Enter., Inc.*, 63 F. Supp. 3d 1062, 1069–70 (N.D. Cal. 2014) (relying on *Knickerbocker*). We reversed, holding that "[i]n light of 'the overwhelming thrust of authority[, which] upholds liability

even under circumstances in which the use of the copyrighted work is of minimal consequence,' it was error to grant summary judgment on the basis that [the defendant's] download of [the program] constituted a de minimis infringement." *Design Data*, 847 F.3d at 1172–73 (second alteration in original) (quoting 2 Nimmer on Copyright § 8.01[G]); *see also BMG Music v. Perez*, 952 F.2d 318, 320 (9th Cir. 1991) (rejecting argument that any conduct short of "wholesale" importation equals de minimis infringement). Though "among the several potential meanings of the term de minimis, [the] defense should be limited largely to its role in determining either substantial similarity or fair use." 2 Nimmer on Copyright § 8.01[G]; *see also Design Data*, 847 F.3d at 1172–73.

Wilmott misinterprets both *Design Data* and *Newton* to suggest that we have approved a de minimis defense when the use of the infringing work is minimal. Though we have frequently characterized the de minimis principle in copyright as one centered around the defendant's "use" of the protected work, *see, e.g.*, *Newton*, 388 F.3d at 1192–93; *VMG Salsoul*, 824 F.3d at 877; *Design Data*, 847 F.3d at 1172, "use" in this context does not refer to *how extensively* a defendant uses an indisputably infringing work, as Wilmott and the district court below interpret the term. Rather, by "use," we have consistently referred to *the quality or quantity* of the protected work that was "used" by the defendant to make the allegedly infringing copy in determining whether the two works were substantially similar. While perhaps best articulated by *Fisher* as a question of whether the defendant's "taking" was "de minimis," as opposed to "use," we have consistently analyzed the de minimis principle in the context of substantial similarity, even if we have referred to it by the somewhat confusing term "use." *See Fisher*, 794 F.2d at 434

n.2. Indeed, in *Design Data*, upon which Wilmott heavily relies, we were simply referencing the discussion of substantial similarity raised in *Newton*, *i.e.*, whether the quantity and quality of the sampled portion of the song "used" by the Beastie Boys made the works substantially similar. *See Newton*, 388 F.3d at 1192–93. The same analysis applies here.

In sum, we have consistently applied the de minimis principle to determine whether a work is infringing by analyzing the quantity and quality of the copying to determine if the allegedly infringing work is a recognizable copy of the original work, in other words, whether the works are substantially similar. We have never recognized a de minimis defense based on the allegedly minimal use of concededly infringing material. The First, Third, Fourth, and Eleventh Circuits have reached the same conclusion. In *Situation Management Systems, Inc. v. ASP. Consulting LLC*, 560 F.3d 53 (1st Cir. 2009), the plaintiff, a consulting company, sued a competitor for copying portions of its copyrighted training materials. *Id*. at 54–55. The district court found that the defendant had copied the plaintiff's materials but concluded that the copying was not actionable because the allegedly infringing works were not substantially similar. *Id*. at 57. On appeal, the defendant argued that the district court's conclusion was best understood as holding that "the amount of copying done was so small as to be de minimis." *Id*. at 58. The First Circuit flatly rejected this argument, holding that "de minimis copying is best viewed not as a separate defense to copyright infringement but rather as a statement regarding the strength of the plaintiff's proof of substantial similarity." *Id*. at 59; *see also id.* ("Used in this fashion, de minimis copying represents simply the converse of substantial similarity." (quoting 2 Nimmer on Copyright § 8.01[G])); *Greene v.*

*Ablon*, 794 F.3d 133, 161 n.33 (1st Cir. 2015) (reaffirming *Situation Mgmt. Sys.*, 560 F.3d at 59).

In *Dun & Bradstreet Software Services, Inc. v. Grace Consulting, Inc.*, 307 F.3d 197 (3d Cir. 2002), the defendant appealed the district court's decision to strike a de minimis defense from the jury charge based on the defendant's argument that its "quantitative infringement [of the plaintiff's copyrighted software] amounted to only twenty-seven lines out of 525,000 lines," where literal copying was conceded. *Id*. at 208. Affirming the district court's decision to strike the de minimis defense, the Third Circuit held that a "de minimis defense does not apply where the *qualitative* value of the copying is material." *Id*. And, in that case, the copied material was so essential that the entire program could not work without it. *Id*. The Third Circuit relied upon the Supreme Court's rejection of "a claim that copying 300 to 400 words of a copyrighted book was insubstantial" for its qualitative analysis of substantial similarity. *Id*. (quoting *Harper & Row, Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 564–66 (1985)).

Similarly, in *Palmer v. Braun*, 287 F.3d 1325 (11th Cir. 2002), Palmer, the author of a book on psychological reflection and mental exercises, sued Braun, who had bought Palmer's book and had taken the related courses offered by Palmer, for copying portions of Palmer's book and reproducing them in his own, competing book. *Id*. at 1327–28. Specifically, Braun had allegedly copied 15 sentences out of the plaintiff's 53-page book in a section on specific mental exercises, an amount the district court concluded was non-actionable de minimis infringement. *Id*. at 1334. On appeal, the Eleventh Circuit rejected this holding. Pointing out that "Braun does not inadvertently sprinkle his work with Palmer's sentences" but rather "uses the same sentences in

the same exercise as Palmer and intends to achieve the same results with them," the court concluded that such use "is not de minimis." *Id*. Though the court ultimately affirmed the district court's preliminary injunction ruling on other grounds, its core holding affirmed that the de minimis principle arises solely when considering substantial similarity to determine actionable copying. *Id*.; *see also Silicon Knights, Inc. v. Epic Games, Inc.*, 551 F. App'x 646, 648–649 (4th Cir. 2014) (rejecting a de minimis defense where the infringing party had copied a copyrighted video game engine "in toto," *i.e.*, all of its code, when it began development of its own game and continued to use 20% of the code from that engine).

Against the overwhelming authority of our precedents and that of our sister circuits, Wilmott relies instead on a strained reading of *Knickerbocker Toy Co. v. Azrak-Hamway Int'l, Inc.*, 668 F.2d 699 (2d Cir. 1982) to assert the existence of a de minimis use defense to actionable copying—a "technical violation of a right so trivial that the law will not impose legal consequences." *Ringgold v. Black Ent. Television, Inc.*, 126 F.3d 70, 74 (2d Cir. 1997). There, Knickerbocker had brought two claims against Azrak, the first for copyright infringement of its Wrist Racers toy that would launch a wind-up model car and the second for trademark infringement based on trade catalogues advertising Azrak's competing toy. *Knickerbocker*, 668 F.2d at 701. During discovery, Knickerbocker obtained from Azrak a "blister" display card that allegedly used a copyrighted photograph of its Wrist Racers product, which then formed the basis of a second, last-minute copyright infringement claim. *Id*. Azrak's Vice President of Merchandising and Operations "testified that the card was simply a sample which Azrak had produced in order to position the artwork, and that a totally different illustration

would be used for the production run of the card." *Id*. The district court succinctly dismissed the blister pack copyright claim, stating that "the short answer is that (the blister card) was only an office copy which was never used." *Id*.

The Second Circuit affirmed this holding in one line, stating "on the record herein, the copyright claim with respect to the blister card falls squarely within the principle of de minimis non curat lex, and the dismissal of that claim is affirmed." *Id*. at 703. The court did not explain this holding further—it provided no analysis or reasoning for its conclusion. It may simply have found no unlawful copying occurred because the office copy was not made public. Moreover, the Second Circuit has never held that the limited circulation of an indisputably infringing work is sufficiently de minimis to serve as a defense to an infringement action.[9] *Knickerbocker* itself can be easily read as falling into the category of cases where the de minimis analysis is more traditionally applied. *Knickerbocker* may be read to hold only that Azrak's "use" of Knickerbocker's protected image in its mockup amounted only to de minimis, *i.e.*, non-

---

[9] The Second Circuit did discuss such a de minimis "technical violation" defense as a theoretical possibility in *Ringgold*, as have some commentators. *See* 126 F.3d at 74. Describing the use of the de minimis defense in this way as being based on "a technical *violation* of a right so trivial that the law will not impose legal consequences" even for indisputably infringing works, the Second Circuit observed that the circumstances of such a defense are unusual and therefore not often the subject of litigation. *Id*. (emphasis added). It offered by way of example only *Knickerbocker* and Judge Pierre Leval's example of a *New Yorker* cartoon photocopied and placed on a refrigerator. *See id.* (citing Pierre N. Leval, *Nimmer Lecture: Fair Use Rescued*, 44 UCLA L. Rev. 1449, 1457 (1997)). *Ringgold* provided no further explanation, as the facts in *Ringgold* concerned the de minimis doctrine as we have recognized it, *i.e.*, whether the works were substantially similar so as to constitute actionable copying. *Id*. at 74–75.

actionable, copying after considering the relative non-significance of the blister pack's protected image, compared to the principal claim that Azrak had copied Knickerbocker's toy, which the evidence plainly refuted. 668 F.2d at 702. This interpretation of *Knickerbocker* would better align the Second Circuit with every other circuit that has applied the de minimis principle in copyright.

Thus, the de minimis analysis is best thought of in terms of the substantiality of the copying, to delineate the boundary between actionable and non-actionable copying. Our long line of precedent and that of the majority of our sister circuits supports the application of the de minimis principle in copyright only to questions of substantial similarity (and potentially fair use), *i.e.*, whether there was de minimis copying of the protected work so as to be non-recognizable as a copy. Wholesale copying or reproduction of another's protected work, like the Indianapolis photo, by definition cannot be de minimis copying.

## C.

We reject Wilmott's "technical violation" theory of a de minimis defense adopted by the district court. The district court found that Wilmott's infringement was "technical," that Wilmott was unaware that it was violating Bell's exclusive copyright in the Indianapolis photo, and that it did not intentionally "use[]" the photo. But holding that a de minimis defense was sustainable to defeat Bell's claims is not the answer to these troubling facts. Rather, the statutory law of copyright itself supplies the answers to these questions. "Copyright 'is a creature of statute, and the only rights that exist under copyright law are those granted by statute.'" *Corbello v. DeVito*, 777 F.3d 1058, 1064 (9th Cir. 2015) (quoting *Silvers v. Sony Pictures Ent., Inc.*, 402 F.3d 881, 883–84 (9th Cir. 2005) (en banc)); *see, e.g.*, 17 U.S.C.

§ 106(1), (3), (5).  "[W]here an unauthorized material use of a copyrighted work does fall within one of those [exclusive] rights, infringement occurs, unless the use is excused by one of the privileges, exemptions, or compulsory licenses found in sections 107 through 122."[10]  William F. Patry, 3 Patry on Copyright § 9:2 (2020 ed.).

The Act carefully details both the exclusive rights in copyright and its exceptions, and it provides for situations where, in other contexts, courts would otherwise apply or rely upon traditional, equitable doctrines, as the district court did here in recognizing a de minimis "technical violation" defense.  In doing so, the Act modifies or completely precludes the application of these doctrines.  For example, in *Petrella v. Metro-Goldwyn-Mayer, Inc.*, the Supreme Court held that the equitable defense of laches was inappropriate as an independent defense to a copyright infringement suit brought within the Act's statute of limitations.  572 U.S. 663, 677 (2014) (citing 17 U.S.C. § 507(b)).  Because § 507(b) "itself takes account of delay" by barring suits more than three years from the date of infringement, the Court held that it was error to apply laches to take account of delays separate from those encompassed by the statute.  *Id.*  Congress enacted a scheme that balanced the "long duration" of a copyright term with a much narrower time limit within which to bring suit, thus "leav[ing] 'little place' for a doctrine that would further limit the timeliness of a copyright owner's suit."  *Id.* at 685 (quoting 1 D. Dobbs, Law of Remedies § 2.6(1), at 152 (2d ed. 1993)).

---

[10] Patry is clear that by his use of "material" in this context he is referencing the concept of substantial similarity so as to constitute actionable copying. *See* 3 Patry on Copyright §§ 9:59, 9:60.

The Act further details the limitations on a copyright owner's exclusive rights and provides defenses to claims of infringement for some types of copying or uses of protected works that might be conceptualized as de minimis. *See* 17 U.S.C. §§ 107–122. While none of these limitations are de minimis in name, Section 112, for example, exempts "ephemeral recordings," such as temporary recordings of broadcasts to be rebroadcast in another time zone, § 112(a), or temporary copies made by online streaming services to buffer or cache songs, § 112(e). The Act even protects the "fair use" of a protected work, notwithstanding the potentially infringing nature of the use, by explicitly weighing "the purpose and character of the use" and "the effect of the use on the market" for the protected work, among other factors. *Id.* § 107. To the extent the de minimis principle also plays a role in the fair use defense by analyzing the extent or manner of the use of a protected work, the de minimis doctrine is itself explicitly codified by statute. *See id.*[11]

Yet nowhere in the Act's numerous and detailed provisions is there any exception for the de minimis use of a concededly infringing work, *i.e.*, for a "technical violation." The Act defines a copyright infringer as "[a]nyone who violates *any* of the exclusive rights of the copyright owner." *Id.* § 501(a) (emphasis added). A prima facie case of infringement thus requires only that a plaintiff demonstrate ownership of the copyright at issue, a violation of an

---

[11] Though Congress did not expressly codify the fair use doctrine until the Copyright Act of 1976, that codification merely recognized the longstanding "judicial doctrine of fair use" that had been recognized by United States courts since 1841. *See Tresóna Multimedia, LLC v. Burbank High Sch. Vocal Music Ass'n*, 953 F.3d 638, 647 (9th Cir. 2020).

exclusive right set forth in copyright, and causation by the defendant. *Giganews*, 847 F.3d at 666.  Tellingly, a plaintiff need not prove damages.  *See id*.  Instead, the Act provides that a plaintiff may elect statutory damages in place of actual damages, thus providing causes of action for infringement even when the infringement has not actually worked any financial harm to the copyright holder.  17 U.S.C. § 504(c).[12] Similarly, the Act also provides that the right "to reproduce the copyrighted work in copies or phonorecords" is an exclusive right of the copyright's owner, as much as any other.  *Id.* § 106(1).  A "technical violation" defense, at least as potentially articulated in *Knickerbocker*, is plainly in tension with this right because it suggests that making a single copy is somehow not enough to show a violation absent some further material use or action.  But, crucially, the Act is agnostic as to the use of the copy once it is made; the unlicensed copying itself *is* the violation.  Thus, the Act "itself takes account of [remedies]" for copyright holders even where the infringing use is minor.  *Petrella*, 572 U.S. at 677.  And the Act itself answers the district court's concerns here about mere, "technical" violations of an exclusive right, "leav[ing] 'little place'" for a defense based on the de minimis use of a concededly infringing work resorted to by the district court.  *See id*. at 685.  This conclusion is further strengthened by the recent enactment of the Copyright Alternative in Small-Claims Enforcement ("CASE") Act, which establishes a Copyright Claims Board within the Copyright Office to create a cost-effective administrative venue for litigating "small claims" of

---

[12] Bell has yet to elect either statutory or actual damages.  *See* 17 U.S.C. § 504(c).  However, given the difficulty Bell will have in demonstrating actual damages (there is no evidence that anyone other than Bell viewed the allegedly infringing copy of the Indianapolis photo), we suspect he will elect statutory damages.

copyright infringement as an alternative to federal courts. *See* 17 U.S.C. §§ 1501–11.

However, our holding does not mean that an infringer's innocent intent and technical use of the infringing work are irrelevant. The Act also accounts for the culpability of the infringer, distinguishing willful from innocent infringement by limiting the statutory damages that can be imposed against the latter. *See Id.* § 504(c)(2); *Unicolors, Inc. v. Urban Outfitters, Inc.*, 853 F.3d 980, 991 (9th Cir. 2017).[13] Thus, any concern that the de minimis doctrine is needed to protect "accidental" or unwitting infringement, a concern that appears to be shared by the district court, is also addressed by the Act, which provides that where an "infringer was not aware and had no reason to believe that his or her acts constituted an infringement of copyright," the court may reduce statutory damages to as little as $200. 17 U.S.C. § 504(c)(2).

Our holding today is thus consistent with the statutory scheme.

## D.

Alternatively, Wilmott characterizes the de minimis use defense as one centered around the lack of any volitional act of infringement and argues that it cannot be liable for infringement because it did not intentionally cause any public display of the Indianapolis photo. Indeed, Wilmott did not even know of the photo's existence until Bell

---

[13] The statute expressly describes when attorneys' fees and costs may be awarded, and Section 505 of the Act leaves the award to the discretion of the district court. Our judicially created doctrine for these awards takes into account an infringer's culpability and motive. *See Tresóna*, 953 F.3d at 653.

contacted the company, and therefore there "was no volitional public display." While Wilmott is correct that non-volitional conduct is not infringing, Wilmott mischaracterizes what we commonly call the "volitional-conduct requirement." *VHT, Inc. v. Zillow Grp., Inc.*, 918 F.3d 723, 731 (9th Cir. 2019) (citation omitted). We reject this "unintentional violation" theory of de minimis use. Here, Wilmott's conduct was volitional for purposes of copyright infringement.

"[T]he word 'volition' in [the copyright] context does not really mean an 'act of willing or choosing' or 'an act of deciding,'" but merely "the unremarkable proposition that proximate causation historically underlies copyright infringement liability no less than other torts." *Giganews*, 847 F.3d at 666 (quoting 4 Nimmer on Copyright § 13.08[C][1]). Indeed, copyright infringement is a strict liability tort. *See* 3 Patry on Copyright § 9:5; 4 Nimmer on Copyright § 13.08[B][1] (explaining that "the innocent intent of the defendant constitutes no defense to liability"). Courts determine "who is close enough to the [infringing] event to be considered the most important cause." *Giganews*, 847 F.3d at 666 (alteration in original) (citation omitted). We have held that a website or service that provides only a platform for third-party users to upload, download, and share content, *i.e.*, merely using the platform as a vehicle, has not engaged in volitional conduct in this sense, because it is the users who cause infringement. *See id.* at 669 (holding that "passively storing material at the direction of users in order to make that material available to other users upon request" is not infringement (citation omitted)); *see also Am. Broad. Cos. v. Aereo, Inc.*, 573 U.S. 431, 438–39 (2014) (distinguishing liability for those who transmit protected works and those who "merely suppl[y] equipment that allows others to do so"). By contrast, one

who "exercised control" or "selected any material for upload, download, transmission, or storage" has acted volitionally. *VHT*, 918 F.3d at 732 (quoting *Giganews*, 847 F.3d at 670).

Wilmott's conduct was plainly "volitional" in the proximate cause sense. Wilmott hosted the Indianapolis photo on its servers in a manner that was accessible to the public. Although Wilmott plausibly claims it did not know of the Indianapolis photo's presence on the server until Bell's first notice to the company, its negligence is nonetheless sufficient. Here, VisitUSA.com did not merely function as an online platform where third-party users independently upload and share materials, *see Giganews*, 847 F.3d at 666, but rather a website managed (and updated) by Wilmott itself, which included the data then stored on the website's servers, including the Indianapolis photo, *cf. VHT*, 918 F.3d at 734. As a result, Wilmott's actions assuming responsibility for and maintaining the server are clearly "the most important cause[s]" of the public display of the Indianapolis photo. *Giganews*, 847 F.3d at 666 (citation omitted). Wilmott's conduct is therefore plainly volitional for purposes of copyright infringement. Whether Wilmott intended to infringe Bell's copyright is ultimately immaterial—"the innocent intent of the defendant constitutes no defense to liability." 4 Nimmer on Copyright § 13.08[B][1]; *see also* 3 Patry on Copyright § 9:5.

## III.

We therefore reverse the district court's grant of summary judgment based on a putative de minimis use defense. On remand, the district court must consider Wilmott's remaining defenses, and it can address the questions surrounding Bell's ownership of the Indianapolis photo, in addition to the other defenses raised by Wilmott.

Because we vacate the district court's order based on its erroneous application of the de minimis doctrine, we also vacate and remand the district court's denial of Wilmott's motion for attorney's fees that was premised on prevailing at summary judgment. Wilmott can renew its motion should it prevail before the district court. Each party shall bear its costs of appeal.

**REVERSED AND REMANDED.**

---

CLIFTON, Circuit Judge, with whom WARDLAW, Circuit Judge, joins, concurring:

I join fully in the opinion by Judge Wardlaw. Although I conclude that the basis upon which the district court granted summary judgment was not appropriate, I understand entirely why the district court sought to dispose of Plaintiff's claims. I write separately to discourage further pursuit of those claims.

Plaintiff is reported to have filed over 100 copyright infringement lawsuits concerning the Indianapolis photo. *Bell v. Davis*, 430 F. Supp. 3d 718, 720–21 (D. Or. 2019). That number exceeds 200 when combined with similar suits Plaintiff has brought for another photograph of the Indianapolis skyline. *Id.* at 721 n.1. With each successive suit, Plaintiff, a retired attorney, is solidifying his identification as a "copyright troll"—one "more focused on the business of litigation than on selling a product or service or licensing their [copyrights] to third parties to sell a product or service." *Glacier Films (USA), Inc. v. Turchin*, 896 F.3d 1033, 1042 (9th Cir. 2018) (alteration in original).

The present case, and the others like it, may be particularly egregious because they are based on a copyright that may not belong to Plaintiff. *See Bell v. Carmen Com. Real Est. Servs.*, No. 1:16-cv-01174-JRS-MPB, 2020 WL 5016891, at *1 (S.D. Ind. Aug. 25, 2020) (noting that "[t]he jury found that Bell did not prove that he 'authored the Indianapolis Skyline Photo, that he owns a copyright in it, and that he registered it with the Copyright Office'"). Even if the copyright does belong to Plaintiff, it seems doubtful that there was sufficient notice of the copyright, because, by his own admission, Plaintiff only registered it in 2011, eleven years after the Indianapolis photo was taken and posted online.

The record does not establish that Defendant knew of this registration, or that it intended to infringe on Plaintiff's purported copyright by displaying the photograph. There is also no evidence in the record that suggests the Indianapolis photo was in fact accessed by anyone other than Plaintiff.

Given this set of facts, I understand the district court's inclination to resolve the case promptly and in Defendant's favor. Although Plaintiff may prevail today, the long-range potential of his claim does not appear bright. He may ultimately prove to be entitled to a judgment in his favor, but nothing in the facts as described to us supports anything more than an award of statutory damages in a limited amount, not in any sum that should encourage further pursuit of this claim.

---

CHOE-GROVES, Judge, concurring in part:

I agree with the majority that the de minimis concept is not a defense for Wilmott's wholesale copying and with the

majority's result vacating the grant of summary judgment and remanding, but I would remand for the district court to first consider the threshold question of whether Bell owns the copyright in the Indianapolis photo, with consideration of the jury verdict in a related case, and to address Wilmott's alleged violation and defenses only if the district court finds valid copyright ownership.

For purposes of summary judgment, Wilmott and the district court assumed that Bell owned a valid copyright in the Indianapolis photo. Now that we are vacating the grant of summary judgment, on remand Bell must first establish ownership of a valid copyright in the Indianapolis photo. *See Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991) (citation omitted); *Topolos v. Caldewey*, 698 F.2d 991, 994 (9th Cir. 1983) (citations omitted) ("In an action for infringement plaintiff necessarily must establish ownership of a valid copyright and copying by the defendant. Ownership of the copyright is therefore always a threshold question."). The district court will need to determine the evidentiary weight to be accorded to Bell's certificate of registration because it was issued eleven years after first publication and thus the presumption of copyright validity does not apply. *See* 17 U.S.C. § 410(c) ("In any judicial proceedings the certificate of a registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate. The evidentiary weight to be accorded the certificate of a registration made thereafter shall be within the discretion of the court."). Furthermore, the district court should consider the jury verdict in *Bell v. Carmen Commercial Real Estate Services*, No. 1:16-cv-01174-JRS-MPB (S.D. Ind. Sept. 26, 2019), *appeal dismissed*, No. 20-2902 (7th Cir. Apr. 23, 2021), a case involving the same Indianapolis photo

that proceeded to jury trial.[1]  The court instructed the jury that:

> Plaintiff "owns" a copyright in the Indianapolis Skyline Photo if, and only if,
>
> > (1) he created the Photo; and
> >
> > (2) he did not create the Photo within the scope of his employment at Cohen & Malad.
>
> It is Plaintiff's burden to prove ownership of the Photo by a preponderance of the evidence.

*Bell v. Davis*, 430 F. Supp. 3d 718, 722 (D. Or. 2019) (citation omitted) (discussing *Carmen*).  The jury verdict form asked, "Do you find that by a preponderance of the evidence that Richard N. Bell authored the Indianapolis Skyline Photo, that he owns a copyright in it, and that he registered it with the Copyright Office?"  *Id.* (citation omitted).  The jury found that he did not.  *Id.* (citation omitted).

In addition to *Carmen* and the instant case, Bell has filed over 100 other similar lawsuits alleging copyright infringement of the same Indianapolis photo.  *Id.* at 721. Most have been resolved by default judgments awarding Bell statutory damages of $2,000 to $3,000 in each case.  *Id.* (citing *Bell v. Barber*, No. 3:18-cv-01491 DMS (BGS), 2019

---

[1] An appeal limited to Bell's second motion for a new trial is pending.  *Bell v. Carmen Com. Real Est. Servs.*, No. 21-1851 (7th Cir. docketed May 13, 2021).

U.S. Dist. LEXIS 159756, at *4 (S.D. Cal. Sept. 16, 2019) ($3,000); *Bell v. Mattox*, No. 1:18-cv-01677-SEB-DLP, 2019 U.S. Dist. LEXIS 23272, at *3 (S.D. Ind. Feb. 12, 2019) ($3,000); *Bell v. KG Am. Real Est. Holdings, LLC*, No. 1:15-cv-01423-JMS-DML, 2016 U.S. Dist. LEXIS 127087, at *5 (S.D. Ind. Sept. 16, 2016) ($2,000); *Bell v. Am. Auto Transp.*, No. 1:11-cv-00766-TWP-DKL, 2014 U.S. Dist. LEXIS 82156, at *1 (S.D. Ind. June 17, 2014) ($2,500)). In a few default judgments, however, Bell obtained the statutory maximum of $150,000. *Id.* at 721–22 (citing *Bell v. Patrick*, No. 1:16-cv-1160-TWP-DML, 2018 U.S. Dist. LEXIS 59685, at *5 (S.D. Ind. Apr. 9, 2018) ($150,000); *Bell v. A1 Luxury Limousine of S. Fla., Inc.*, No. 1:16-cv-02536-LJM-TAB, 2017 U.S. Dist. LEXIS 132231, at *4–5 (S.D. Ind. Aug. 18, 2017) ($150,000)). I share Judge Clifton's concern that these awards, most of which were granted pursuant to default judgments, were obtained despite the questions surrounding Bell's ownership. This concern is all the more reason to adhere to the statutory requirement that Bell must establish ownership on remand before he may avail himself of the protection afforded to copyright owners.

Because Bell has not yet established that he is the owner of a valid copyright, I would not discuss the issue of whether Wilmott's actions constitute public display. Having concluded that the de minimis concept does not prevent Wilmott's copying from being actionable, I would reverse and remand for the district court to first determine copyright ownership including considering the jury verdict in *Carmen*, and, if the district court finds that Bell's ownership of the copyright is valid, to then consider whether Wilmott's total copying violated the exclusive right to publicly display and, if applicable, Wilmott's remaining defenses.

For the foregoing reasons, I concur in part.