**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

SCHRADER CELLARS, LLC,

*Plaintiff-counter-defendant-Appellee / Cross-Appellant*,

v.

ROBERT M. ROACH, Jr.,

*Defendant-counter-claimant-Appellant / Cross-Appellee.*

Nos. 23-15862
23-15990

D.C. No. 3:21-cv-01431-SK

OPINION

Appeal from the United States District Court
for the Northern District of California
Sallie Kim, Magistrate Judge, Presiding

Argued and Submitted July 15, 2024
San Francisco, California

Filed February 21, 2025

Before: Milan D. Smith, Jr., Mark J. Bennett, and Anthony
D. Johnstone, Circuit Judges.

Opinion by Judge Bennett

## SUMMARY[*]

### California State Law

The panel (1) reversed the district court's summary judgment in favor of Schrader Cellars, Inc., a wine company, (a) on Cellars's claim seeking declaratory relief that Robert M. Roach, a Texas attorney, did not have any ownership interest in Cellars and (b) on four counterclaims brought by Roach; and (2) affirmed the district court's judgment after a jury trial on Cellars's claim for breach of fiduciary duty.

Roach claimed to have entered into an oral agreement with Fred Schrader, former owner of Cellars, regarding the creation of another company, RBS LLC, which he asserted had an ownership interest in Cellars. After Fred Schrader sold Cellars to Constellation Brands, Roach sued him and Constellation in Texas state court, claiming that the sale was improper. Cellars filed the current action, and Roach asserted counterclaims.

Reversing the district court's grant of summary judgment for Cellars on its claim for declaratory relief, and remanding, the panel held that the district court erred in declaring that Roach had no ownership interest in Cellars via the purported oral agreement. Roach had provided legal services to both Fred Schrader and Cellars. Under California law, there is a rebuttable presumption that a transaction was the product of undue influence by the attorney if the transaction violated California Rule of Professional Responsibility 3-300. The district court concluded that the

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

RBS agreement was made in violation of Rule 3-300 because the agreement was not in writing and that Roach did not rebut the resulting presumption of undue influence. The panel, however, concluded that there were triable issues of fact concerning whether Roach rebutted the presumption by showing that the transaction was fair and just and that Fred Schrader was fully advised.

The panel held that the district court therefore also erred in concluding, and instructing the jury, that Roach breached his fiduciary duties to Cellars. The panel also reversed the district court's grant of summary judgment for Cellars on Roach's four ownership counterclaims and remanded them for trial.

Affirming the district court's judgment after trial on the claim for breach of fiduciary duty, the panel held that the erroneous jury instruction had no effect on the outcome of the trial because the jury answered "yes" to the special verdict question: "Do you find that the gravamen—or heart—of the claim that Cellars brings for breach of fiduciary duty against Roach is based on his filing of the Texas lawsuit?" Cellars's claim thus was barred by the California litigation privilege, and the jury did not reach the remaining issue of damages. The panel held that, even if it were the case that the court rather than the jury must decide the privilege question, the panel would still conclude, as the jury did, that the privilege barred Cellars's claim.

## COUNSEL

R. Casey Low (argued) and Sarah Goetz, Pillsbury Winthrop Shaw Pittman LLP, Austin, Texas; Stacie O. Kinser, Pillsbury Winthrop Shaw Pittman LLP, San Francisco, California; for Plaintiff-counter-defendant-Appellee.

William J. Boyce (argued), Robert B. Dubose, Alexander Dubose & Jefferson LLP, Houston, Texas; Manuel López, Roach & Newton LLP, Houston, Texas; for Defendant-counter-claimant-Appellant.

## OPINION

BENNETT, Circuit Judge:

This dispute arises out of a former friendship and business relationship between Fred Schrader ("Fred"), former owner of Schrader Cellars, LLC ("Cellars"), and Robert M. Roach. Roach, a Texas attorney, claimed to have entered into an oral agreement with Fred regarding the creation of another company, RBS LLC, which he asserts has an ownership interest in Cellars. After Fred successfully sold Cellars to Constellation Brands ("Constellation") in 2017, Roach sued Fred and Constellation in Texas state court, claiming that the sale was improper. In 2021, Cellars filed this action in the Northern District of California, seeking, *inter alia*, a declaration that Roach did not have any ownership interest in Cellars. Roach asserted six counterclaims.

As relevant here, on summary judgment, the district court granted Cellars's request for declaratory relief and dismissed

Roach's counterclaims. The case went to trial on Cellars's remaining claim of breach of fiduciary duty. The district court instructed the jury that, as a matter of law, Roach had breached his fiduciary duties to Cellars, so the jury decided only the issue of harm. The jury found that Roach's breach of fiduciary duty had harmed Cellars during the limitations period but did not award damages due to the "litigation privilege defense." Roach appealed the summary judgment order in Case No. 23-15862, and Cellars appealed the district court's trial and post-trial orders in Case No. 23-15990. In Case No. 23-15862, we reverse and remand. In Case No. 23-15990, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Fred and Roach were friends for more than two decades. Fred is a businessman and the former sole manager of Cellars, a wine company. Roach is a Texas attorney. For years, Roach provided legal services to both Fred and Cellars.[1]

In the early 2000s, Fred and Roach began discussing the creation of a new wine company that would include Thomas Brown, a winemaker. The company would be called "Roach Brown Schrader" or "RBS."[2] But because Fred and Roach never entered into a written engagement agreement, the precise terms of the oral agreement are dependent, in part,

---

[1] The parties differently characterize the nature and extent of those legal services. Roach claims that he provided only "sporadic and limited 'high-level' business advice to Fred, even in matters that nominally involved . . . Cellars." Cellars claims that "[i]t is . . . undisputed that Roach performed various legal services for both Fred and Cellars from 2001 [to] 2016."

[2] The parties still refer to that entity as RBS, even though Brown eventually dropped out.

on Fred's and Roach's vastly different recollections as to those terms.

According to Cellars, Roach would provide legal work "as needed" to Fred and his California wine companies, including Cellars.  Roach would also loan Fred up to $150,000 for wine production over three years.  In exchange, Roach would be repaid any money he contributed with interest and would receive 15 cases of Cellars wine per year. Fred would also include Roach's name on one of the Cellars labels.[3]

According to Roach, Fred was two years into launching his own new wine, "Schrader," and was struggling financially.  Before RBS, Fred had solicited Roach's investment for a different project, a Sonoma pinot noir called Aston.  Roach agreed to invest in Aston in exchange for an ownership interest, but later withdrew when another investor asked to be the sole investor and co-owner with Fred.  Fred then asked Roach to invest and partner in RBS.  Roach's investment was partially used to obtain Beckstoffer To Kalon Clone 337 ("Beckstoffer") grapes.  Roach "agreed to invest all the capital to obtain [the Beckstoffer] grapes . . . in

---

[3] Cellars claims that Fred's and Roach's subsequent conduct was consistent with Fred's version of the terms of the oral agreement.  First, Fred named one of Cellars's wines "RBS," with the "R" standing for Roach.  Second, between October 2001 and April 2003, Roach made out three checks to "Schrader Cellars," for a total of $135,000.  Cellars deposited the checks into its bank account and bought grapes used for wine.  Cellars repaid Roach's $135,000 contribution in two installments. On December 1, 2005, Cellars paid Roach $100,000.  On December 13, 2010, Cellars sent Roach another $50,000 check with the notation "final payment loan."   Roach disagreed that these payments were full repayment of his prior capital contributions plus interest but accepted two additional cases of Cellars wine to account for the shortfall.

exchange for an equal equity interest in the wine." For regulatory and administrative purposes, Fred and Roach agreed that Cellars "would make and sell the wine for [their] separate RBS business under a verbal license agreement."

In 2017, Franciscan Vineyards, then a Constellation subsidiary, acquired Cellars. Constellation thus became the parent company of Cellars. After Roach learned of the Constellation acquisition, he sued Fred and Constellation in Texas state court ("Texas Litigation"). Roach asserted that he had "equitable ownership interests" in Cellars arising out of Fred's misappropriation of Roach's RBS investment for Cellars's use and the deliberate commingling of assets. The parties have represented that the Texas Litigation is stayed.

Although not a party to the Texas Litigation, Cellars felt "threatened" by Roach's ownership claims in that litigation. In February 2021, Cellars sued Roach in the Northern District of California seeking, among other things, declaratory relief, and relief for unjust enrichment[4] and breach of fiduciary duty. Cellars sought to obtain a

---

[4] Cellars dismissed its claims for unjust enrichment.

declaration that Roach had no ownership interest in Cellars.[5] Roach counterclaimed.[6]

At summary judgment, the district court granted Cellars's motion for partial summary judgment on its claim for declaratory relief[7] and denied Roach's motion for partial

---

[5] Cellars sought a judicial declaration that:

> a. There were no liens or encumbrances on any of Schrader Cellars, LLC's physical assets or intellectual property when Schrader Cellars, LLC became a wholly-owned subsidiary of Franciscan Vineyards (n/k/a) TPWC, Inc.;
>
> b. All right, title, and interest to the claimed assets are the sole property of Plaintiff Schrader Cellars, LLC, including all physical assets, inventory, and intellectual property associated with Schrader Cellars and the SCHRADER marks;
>
> c. Roach has no rights or title to Plaintiff's assets;
>
> d. Roach has no registered or common law rights to any SCHRADER mark, including the Schrader RBS mark; and
>
> e. Roach has zero percent membership interest in Schrader Cellars, LLC.

[6] Roach asserted six counterclaims: (i) trademark cancellation (for RBS); (ii) trademark cancellation (for RBS and other trademarks); (iii) declaratory judgment that Roach possesses ownership rights in RBS and Cellars; (iv) declaratory judgment that Cellars is equitably estopped from denying Roach's ownership in RBS; (v) declaratory judgment that Cellars is equitably estopped from denying Roach's ownership in Cellars; and (vi) equitable accounting.

[7] The district court characterized the parties' dueling claims for declaratory relief as follows:

summary judgment. The district court reasoned that even if Roach had an oral agreement with Cellars, it was unenforceable because Roach had not put the agreement in writing and so violated Rule 3-300 of the California Rules of Professional Conduct. It also reasoned that because Roach had failed to rebut the presumption of undue influence created by a violation of the rule under California Probate Code § 16004, Roach had breached his fiduciary duty to Cellars, and thus the supposed oral agreement was not just unenforceable, but voidable by Cellars. The district court later instructed the jury that "Roach breached his fiduciary duty to Cellars." As to Roach's counterclaims, the district court granted summary judgment for Cellars on counts three, four, five, and six because they were based on the unenforceable oral agreement.[8]

---

> Cellars and Roach each assert claims for declaratory relief based on the same disputed issue: whether Roach loaned money for RBS or whether Roach entered into a partnership with Fred for RBS. If Cellars is correct, then it prevails on its motion for partial summary judgment on its first claim for declaratory relief and also on its motion against Roach's claims for declaratory relief. If Roach is correct, then Cellars'[s] claim for declaratory relief, to the extent based on breach of fiduciary duty, is defeated.

The district court then concluded: "Given that the alleged partnership agreement is not enforceable, Cellars prevails on its claim for declaratory relief, and Roach cannot prevail on his claims for declaratory relief and equitable accounting, as they are all based on the existence of an enforceable partnership agreement . . . ."

[8] In a separate summary judgment order, the district court granted Cellars's motion for partial summary judgment as to Roach's claims for

The district court then rejected Roach's argument that the statute of limitations barred Cellars's claims for breach of fiduciary duty and defense of unclean hands. It did, however, subsequently reconsider its statute of limitations ruling and permit Roach to present evidence of that defense at trial.

Thus, the breach of fiduciary duty claim was the only one that went to trial. Before trial, Roach argued that the Texas Litigation was privileged under the California litigation privilege and the *Noerr-Pennington* doctrine[9] and that Cellars therefore could not maintain a claim against him based on that filing. In an "Order Regarding Privilege," the district court noted that the California litigation privilege might also bar Cellars's claim for breach of fiduciary duty.

The jury first found that Roach's breach of fiduciary duty was a substantial factor in causing Cellars harm, and that Cellars's actual injury occurred within the limitations

---

trademark cancellation (counts one and two). Roach does not appeal that order.

[9] The *Noerr-Pennington* doctrine "is a rule of statutory construction that requires courts to construe statutes to avoid burdening conduct that implicates the protections of the Petition Clause of the First Amendment." *United States v. Koziol*, 993 F.3d 1160, 1171 (9th Cir. 2021) (citing *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 931–32 (9th Cir. 2006)). "Under the *Noerr-Pennington* doctrine, those who petition any department of the government for redress are generally immune from statutory liability for their petitioning conduct." *Sosa*, 437 F.3d at 929 (citing *Empress LLC v. City & County of San Francisco*, 419 F.3d 1052, 1056 (9th Cir. 2005)). But "neither the Petition Clause nor the *Noerr-Pennington* doctrine protects sham petitions, and statutes need not be construed to permit them." *Id.* at 932.

period.  But the district court also instructed the jury as to privilege:

> A person who files a lawsuit is immune from liability simply for filing the lawsuit. However, a person is not immune from liability from other actions.  You must decide if the gravamen—or heart—of the claim that Cellars brings for breach of fiduciary duty against Roach is based on his filing of the Texas [Litigation].

After inquiring as to breach of fiduciary duty, the Special Verdict Form then asked: "Do you find that the gravamen—or heart—of the claim that Cellars brings for breach of fiduciary duty against Roach is based on his filing of the Texas [Litigation]?"  The jury answered that question "yes."  The Special Verdict Form told the jury that if they answered that question "yes," then they should not proceed to reach the question of damages.

After the verdict, in its motion for new trial and renewed motion for judgment as a matter of law, Cellars argued that this instruction was erroneous because it (1) asked the jury to resolve a question of law, and (2) incorrectly stated the standards governing the litigation privilege and the *Noerr-Pennington* doctrine.  The district court rejected Cellars's arguments and denied the motions.

Roach timely appealed from the district court's summary judgment decisions.  Roach argues that (1) the district court's summary judgment order disregarded genuine issues of disputed facts and the court's own finding that RBS was separate from Cellars; (2) Cellars lacked standing to void the RBS agreement; (3) the court overlooked Texas ethics

decisions; and (4) the court failed to consider the merits of Roach's non-contract counterclaims. Cellars filed its own appeal concerning the district court's trial and post-trial orders. Cellars argues that (1) Roach presented legally insufficient evidence of privilege; (2) the privilege instruction inaccurately stated the law; (3) Cellars was substantially prejudiced and unfairly surprised by the submission of unadmitted hearsay pleadings to the jury; and (4) the jury's finding does not preclude equitable relief.

## II. DISCUSSION

### A. The district court erred in granting summary judgment for Cellars.

We review an order granting summary judgment de novo, "viewing the evidence in the light most favorable to the non-moving party and drawing all reasonable inferences in its favor." *Bell v. Wilmott Storage Servs., LLC*, 12 F.4th 1065, 1068 (9th Cir. 2021) (citing *Range Rd. Music, Inc. v. E. Coast Foods, Inc.*, 668 F.3d 1148, 1152 (9th Cir. 2012)). We do not "weigh the evidence or determine the truth of the matter, but only determine[] whether there is a genuine issue for trial." *Balint v. Carson City*, 180 F.3d 1047, 1054 (9th Cir. 1999) (en banc) (citing *Summers v. A. Teichert & Son, Inc.*, 127 F.3d 1150, 1152 (9th Cir. 1997)).

The first issue in Roach's appeal is whether the district court erred in declaring that Roach had no ownership interest in Cellars via the purported RBS agreement. Cellars argued at summary judgment that even if Roach's version of the RBS oral agreement existed, Roach could not enforce it. Cellars argued that Roach violated California Rule of Professional Responsibility 3-300, which requires that lawyers not enter into business transactions with clients unless (A) the "terms are fair and reasonable" and "disclosed

and transmitted in writing"; (B) "[t]he client is advised in writing that the client may seek the advice of" independent counsel; and (C) "[t]he client thereafter consents in writing" to the agreement.

While Rule 3-300 does not itself provide a basis for civil liability or voiding an agreement, California courts have relied on Section 16004 of the California Probate Code[10] to find that if a transaction involving an attorney violates Rule 3-300, there is a rebuttable presumption that the transaction is the product of undue influence by the attorney. *See Ferguson v. Yaspan*, 183 Cal. Rptr. 3d 83, 91 (Ct. App. 2014). An attorney's failure to rebut the presumption

---

[10] California Probate Code § 16004 provides:

> (a) The trustee has a duty not to use or deal with trust property for the trustee's own profit or for any other purpose unconnected with the trust, nor to take part in any transaction in which the trustee has an interest adverse to the beneficiary.

> (b) The trustee may not enforce any claim against the trust property that the trustee purchased after or in contemplation of appointment as trustee, but the court may allow the trustee to be reimbursed from trust property the amount that the trustee paid in good faith for the claim.

> (c) A transaction between the trustee and a beneficiary which occurs during the existence of the trust or while the trustee's influence with the beneficiary remains and by which the trustee obtains an advantage from the beneficiary is presumed to be a violation of the trustee's fiduciary duties. This presumption is a presumption affecting the burden of proof. This subdivision does not apply to the provisions of an agreement between a trustee and a beneficiary relating to the hiring or compensation of the trustee.

"renders the transaction voidable at the client's option." *Id.* (citing *BGJ Assocs. v. Wilson*, 7 Cal. Rptr. 3d 140, 149 (Ct. App. 2003)).   This presumption can be rebutted if the attorney "show[s] that the dealing was fair and just, and that the client was fully advised." *BGJ Assocs.*, 7 Cal. Rptr. 3d at 148 (quoting *Felton v. Le Breton*, 28 P. 490, 494 (Cal. 1891)).

The district court determined that (1) California law, not Texas law, governed the question of any supposed agreement's enforceability; (2) Roach performed legal work for Fred, Cellars, and RBS; and (3) the work was done in California.  As a result, the district court concluded that "the purported oral agreement in which Roach allegedly obtained a partnership interest in RBS LLC was made in violation of Rule 3-300" because the agreement was not in writing.  The district court also noted that although "[a]n attorney may rebut the presumption of undue influence by showing that 'the dealing was fair and just,' and 'the client was fully advised[,]' . . . Roach has made no such effort to rebut this presumption."   Thus, the district court held that the agreement, even if it did exist, "[was] not enforceable" and that Roach could not have any ownership interest in Cellars.

We find that the district court erred because there are triable issues of fact concerning whether Roach rebutted the presumption regarding his alleged breach of his duties under Rule 3-300—that is, there are triable issues of fact concerning whether the transaction "was fair and just" and whether Fred "was fully advised." *BGJ Assocs.*, 7 Cal. Rptr. 3d at 148.  Not only did Roach expressly argue fairness below, but the basic facts of the case—when viewed in the light most favorable to Roach—demonstrate that the transaction was fair and just and that Fred was fully advised.

First, Roach, through declaration and deposition testimony, averred that RBS was Fred's idea and that Fred solicited a cash investment from Roach. Before RBS, Fred had also solicited Roach's investment for a different wine project—Aston. A former Cellars partner, Carole Boehk, confirmed that at the time of RBS's formation, Fred was short of cash and that Roach was the sole supplier of cash for RBS.

Second, Fred required Roach to operate without a written agreement, which was how Fred usually operated with his business partners. The district court concluded that this fact was undisputed. Roach further averred that he had requested a written partnership agreement—and even had one drafted by Farella Braun + Martel, LLP ("Farella"), a law firm Fred used, but Fred "refused and said he preferred doing business by oral [or] handshake agreements" and wanted a partnership "built on complete trust . . . instead of a written agreement." [11]

Third, Fred dictated the terms of the oral RBS agreement. Roach testified that he "placed [his] full trust and confidence in Fred['s] stewardship of RBS" and that "Fred had also always demanded [his] complete trust." Roach "agreed that Fred would have the day-to-day exclusive operational control of the wine production, marketing, and sales." According to Roach, Fred sought out Texas investors (including Roach) because Fred believed that they "were willing to tolerate higher risk and would also permit him more freedom in the day-to-day management of

---

[11] At Fred's request, Roach also hired Farella to prepare the paperwork to create RBS and to file it with the California Secretary of State.

his projects." Fred also continued to exert control over Roach's marketing activities.

And while Cellars is now very successful, Roach testified that this was not always the case. Cellars had been unsuccessful at the time that Roach took a "gamble" on Fred. *See Ferguson*, 183 Cal. Rptr. 3d at 92–93 (noting that the relevant time period to evaluate fairness is the time of the contract). According to Roach, his investment was vital to Cellars's turnaround and later extraordinary success. Before Roach's investment, Cellars's wines had performed poorly. Roach's investment was used to obtain Beckstoffer grapes— the apparent basis for Fred and Cellars's subsequent success.

Roach also averred that Fred made false representations to induce Roach to enter into the RBS agreement. Fred allegedly promised Roach that Roach "was making an equity investment and obtaining an equity ownership and partnership interest in the RBS wine business." According to Roach, "Fred said frequently that RBS was a separately owned business, distinct from Schrader Cellars." But rather than using Roach's money exclusively for RBS, as promised, Fred used Roach's money for his Cellars wines. While Fred now asserts that Roach's cash investment was a loan, the record evidence casts strong doubt on that assertion. Cellars's own accounting records referred to Roach as an "investor," Roach's contribution as an "investment," and the RBS project as a "joint venture." This evidence, in the light most favorable to Roach, indicates that Fred promised Roach ownership and partnership rights and that Fred was fully informed of the terms of their partnership.

Roach testified that Fred, in addition to inducing him to invest in the RBS partnership, also induced him to provide

other (non-legal) services. According to Roach, for 15 years, he provided services to the RBS partnership, including marketing both RBS and Cellars wines. Roach alleged that Fred and Cellars continuously led Roach to believe that he was a partner and owner of RBS given that he provided marketing services without compensation. For example, Cellars's mailing brochure for its 2001 vintage stated that RBS was made "with Randy Roach" and identified Roach as one of "three partners" in RBS. Roach's name was on the RBS cork. Fred and Cellars created a business card for Roach identifying him as "Vintner" of RBS. Fred referred to Roach in writing as "a wine partner of mine" and "MY WINE PARTNER." Fred always called Roach "Vintner Roach" and "Partner Roach." Cellars's management described RBS to Roach as "YOUR" wine. Cellars told its trademark lawyers that Roach had a "vested interest" in Cellars's trademarks disputes.

Some of this evidence may be consistent with Cellars's version of the transaction: that the investment was simply a "loan," and that, in exchange, Fred, among other things, named one of Cellars's wines for Roach. But, at the very least, there is a triable issue of fact on whether the alleged agreement was void under Rule 3-300 (as informed by California Probate Code § 16004). We find the district court's determination that Roach had no ownership interest in Cellars via the purported RBS agreement based on Rule 3-300 to have been in error. We accordingly reverse and remand the district court's grant of summary judgment in Cellars's favor on its declaratory judgment claim.

For the reasons we discuss above, we also hold that the district court erred in concluding (and instructing the jury) that Roach had breached his fiduciary duties to Cellars.

Finally, because the district court concluded that Roach's alleged violation of Rule 3-300 made the RBS agreement unenforceable and therefore voidable by Cellars, which, in turn, justified granting summary judgment for Cellars on four of Roach's ownership counterclaims, we also reverse the district court's grant of summary judgment for Cellars on Roach's counterclaims three, four, five, and six and remand them for trial.

**B. We affirm the district court's final judgment and decline to remand for a new trial limited to damages and equitable relief.**

We hold above that the district court erroneously instructed the jury that Roach had breached his fiduciary duties to Cellars. But that jury instruction ultimately had no effect on the outcome of the trial, because the jury answered "yes" to the special verdict question: "Do you find that the gravamen—or heart—of the claim that Cellars brings for breach of fiduciary duty against Roach is based on his filing of the Texas lawsuit?" The district court thus concluded that Cellars's claim was barred by the California litigation privilege, so the jury did not reach the remaining issue of damages.

On cross-appeal, Cellars asks us to reverse the district court's final judgment. We review de novo the district court's denial of a renewed motion for judgment as a matter of law. *Gilbrook v. City of Westminster*, 177 F.3d 839, 864 (9th Cir. 1999).

### a. *Whether the litigation privilege instruction is reversible error.*

Cellars argues that Roach's privilege defense is an issue of law that the jury could not decide and that, in any case,

Roach has not presented legally sufficient evidence of privilege. Even if it were the case that the court must decide the privilege question—and we make no determination on that issue—we would still conclude, as the jury did, that privilege bars Cellars's claim. Any error resulting from the instruction of the jury is therefore harmless. *See Caballero v. Concord*, 956 F.2d 204, 206 (9th Cir. 1992). Roach's privilege defense is based on California's litigation privilege.[12] Under California Civil Code § 47(b), a "publication or broadcast" made as part of the "judicial proceeding" is privileged. The litigation privilege applies to

---

[12] The district court concluded that, alternatively, Roach's privilege defense was based on the *Noerr-Pennington* doctrine. "The *Noerr-Pennington* doctrine derives from the First Amendment's guarantee of 'the right of the people . . . to petition the Government for a redress of grievances.'" *Sosa*, 437 F.3d at 929 (quoting U.S. Const. amend. I). The doctrine provides that litigants who "petition . . . the government for redress are generally immune from statutory liability for their petitioning conduct." *Id.* (citing *Empress*, 419 F.3d at 1056). The privilege applies to the filing of a petition and to "conduct incidental to the prosecution of the suit." *Freeman v. Lasky, Haas & Cohler*, 410 F.3d 1180, 1184 (9th Cir. 2005) (quoting *Columbia Pictures Indus., Inc. v. Pro. Real Est. Invs., Inc.*, 944 F.2d 1525, 1528 (9th Cir. 1991), *aff'd on other grounds*, 508 U.S. 49 (1993)). The *Noerr-Pennington* doctrine applies to state law tort claims. *Theme Promotions, Inc. v. News Am. Mktg. FSI*, 546 F.3d 991, 1007 (9th Cir. 2008). Unlike the California litigation privilege, the *Noerr-Pennington* doctrine does not provide immunity from suit but is an affirmative defense to liability. *Nunag-Tanedo v. E. Baton Rouge Par. Sch. Bd.*, 711 F.3d 1136, 1140 (9th Cir. 2013). Because, as discussed, we hold that Roach's privilege defense based on California's litigation privilege is legally sufficient, we need not address this alternative basis.

all cases except claims for malicious prosecution[13] and claims for attorney malpractice. *Mindy's Cosmetics, Inc. v. Dakar*, 611 F.3d 590, 600 (9th Cir. 2010) (citing *Kolar v. Donahue, McIntosh & Hammerton*, 52 Cal. Rptr. 3d 712, 719 (Ct. App. 2006); *Mattco Forge, Inc. v. Arthur Young & Co.*, 6 Cal. Rptr. 2d 781, 790 (Ct. App. 1992)). The litigation privilege is given a "broad interpretation" and "is not limited to statements made during a trial or other proceedings, but may extend to steps taken prior thereto, or afterwards." *Action Apartment Ass'n., Inc. v. City of Santa Monica*, 163 P.3d 89, 95 (Cal. 2007) (quoting *Rusheen v. Cohen*, 128 P.3d 713, 719 (Cal. 2006)). The privilege "applies to any publication required or permitted by law in the course of a judicial proceeding to achieve the objects of the litigation, even though the publication is made outside the courtroom and no function of the court or its officers is involved." *Silberg*, 786 P.2d at 369. And, of course, the privilege, when applicable, protects not just portions of pleadings or communications from disclosure, but also against claims based on the filing of the suit. *See, e.g.*, *Kashian v. Harriman*, 120 Cal. Rptr. 2d 576, 598 (Ct. App. 2002) ("The communications in this case were not only related to the litigation, they *were* the litigation, or more accurately the pleadings in the litigation.").

---

[13] "The only exception to application of [California's litigation privilege] to tort suits has been for malicious prosecution actions," because "[t]he policy of encouraging free access to the courts . . . is outweighed by the policy of affording redress for individual wrongs when the requirements of favorable termination, lack of probable cause, and malice are satisfied." *Silberg v. Anderson*, 786 P.2d 365, 371 (Cal. 1990) (second alteration in original) (citing *Albertson v. Raboff*, 295 P.2d 405, 410 (Cal. 1956)), *as modified* (Mar. 12, 1990). Here, Cellars does not plead malicious prosecution.

Cellars challenges whether Roach provided evidence of the elements of the litigation privilege. The privilege applies to "any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants . . . ; (3) to achieve the objects of the litigation; and (4) that [has] some connection or logical relation to the action." *Action Apartment*, 163 P.3d at 95 (alteration in original) (citation omitted). We agree with Roach that the four elements for litigation privilege apply here. Roach asserts the privilege based on the Texas Litigation, *i.e.*, a judicial proceeding. Roach was a litigant in the Texas Litigation. Roach filed pleadings in the Texas Litigation to assert his ownership interest in RBS. And the pleadings in the Texas Litigation have a logical connection to the Texas Litigation.

Cellars nevertheless argues that the California litigation privilege does not apply to an attorney's breach of duties to former clients, as claims for attorney malpractice are an exception to the litigation privilege. We disagree, because we agree with the district court that "the crux of this dispute was not [malpractice, *i.e.*,] Roach's action in representing Cellars." Rather, "the crux of this claim for breach of fiduciary duty was Roach's attempt to gain ownership of Cellars." As the district court correctly noted, "[a]lthough there is case law indicating that the litigation privilege under California law does not apply to malpractice actions against an attorney, there is no case law indicating that actions for breach of fiduciary duty are barred." Indeed, in the related SLAPP context, California courts have distinguished between a situation when an attorney is sued for acts taken on behalf of a client and a situation when an attorney is sued for acts taken on behalf of a third party. *Cf. Thayer v. Kabateck Brown Kellner LLP*, 143 Cal. Rptr. 3d 17, 30 (Ct. App. 2012) ("In other words, only the 'first class' of

claims—those brought by former clients against their former attorneys based on the attorneys' acts on behalf of those clients—may not be within the ambit of SLAPP. The other kinds of actions—'(2) clients' causes of action against attorneys based upon statements or conduct solely on behalf of different clients, and (3) nonclients' causes of action against attorneys'—are." (quoting *PrediWave Corp. v. Simpson Thacher & Bartlett LLP*, 102 Cal. Rptr. 3d 245, 263 (Ct. App. 2009))), *as modified* (June 22, 2012). Cellars's claim for breach of fiduciary duty is not the type of ordinary malpractice action that falls outside the scope of the litigation privilege. *Cf.* Instead, it arises in the context of a lawsuit that Roach, its former attorney, filed *against* Cellars's interests, not *on behalf of* Cellars.

We find, as the jury did, that "the gravamen—or heart—of the claim that Cellars brings for breach of fiduciary duty against Roach is based on his filing of the Texas [Litigation]." [14] Cellars's claim for breach of fiduciary duty is thus barred by the litigation privilege.

*First*, Roach introduced evidence—and the district court took judicial notice of the fact—that Cellars had an opportunity to intervene in the Texas Litigation, but rather than intervening, Cellars filed this suit.

---

[14] Cellars contends that this articulation of the litigation-privilege standard is incorrect because it inappropriately borrowed language from California's anti-SLAPP statute, by using the word "gravamen." We disagree. The word "gravamen" is accurate, as evidenced by California courts' use of the word "gravamen" to describe the litigation-privilege inquiry. *See, e.g.*, *Rubin v. Green*, 847 P.2d 1044, 1049 (Cal. 1993); *Action Apartment*, 163 P.3d at 100–01; *Ramalingam v. Thompson*, 60 Cal. Rptr. 3d 11, 19–21 (Ct. App. 2007).

*Second*, Roach's Texas Litigation was the basis for Cellars to prove an *element* of its fiduciary-duty claim— damages.  Cellars's only claim for damages was the attorneys' fees that it expended to respond to the Texas Litigation and Roach's claims of ownership.  Cellars's own expert confirmed that those fees were incurred to "quiet title" after Roach's Texas Litigation called the ownership of the assets into question.

*Third*, Cellars's own statements indicate that it filed this suit in response to the Texas Litigation.  At trial, Fred testified that Roach's actions constituted a "shakedown."  In closing, when describing what led to Cellars's lawsuit, Cellars likewise referred to Roach's Texas Litigation as a "shakedown."  Cellars also accused Roach of "threaten[ing]" to take ownership of Cellars, "lock, stock, and barrel." According to Cellars, Roach's request for compensation "became troublesome enough to require this lawsuit," before telling the jury "[i]t's about time for the onslaught to end."

Cellars also implied its motive for the lawsuit in writing. The district court took judicial notice of Cellars's original complaint and published it to the jury.  In that complaint, Cellars admitted that Roach's Texas Litigation prompted it to file this suit in California.  The original complaint stated:

> In light of Roach's assertion of ownership of property that is currently in Schrader Cellars LLC's possession in California, Schrader Cellars brings this action in this Court given the location of the physical assets in this jurisdiction.  Roach has already refused to assert such jurisdiction over Schrader Cellars in Texas, which is lacking in that State nonetheless.  Accordingly, the actual and

claimed equity ownership of Schrader
Cellars, a California LLC, and its California
assets is entirely unclear, and presents an
actual controversy that can only be resolved
by a California court.

And in later opposing Roach's motion for summary
judgment, Cellars noted that "Cellars'[s] claims and
defenses have been brought for the primary purpose of
nullifying Roach's attempts to gain an ownership interest in
. . . Cellars." Cellars's admissions confirmed that Cellars's
claim of breach of fiduciary duty was specifically brought in
response to the Texas Litigation.

Because we treat Cellars's statements in its pleadings,
briefing, and at trial as judicial admissions, *see Am. Title Ins.
Co. v. Lacelaw Corp.*, 861 F.2d 224, 226–27 (9th Cir. 1988);
*United States v. Wilmer*, 799 F.2d 495, 502 (9th Cir. 1986),
we refuse to disturb the verdict for reaching the same
conclusion—that the gravamen of Cellars's claim for breach
of fiduciary duty was based on the Texas Litigation.

We thus conclude that the district court did not commit
reversible error in issuing its jury instruction on litigation
privilege.

### b. Whether Cellars was substantially prejudiced and unfairly surprised by the submission of unadmitted hearsay pleadings to the jury.

Cellars next argues that the district court's reversal on
whether hearsay pleading allegations could be shown to the
jury compounded the harmful error. Specifically, Cellars
argues that it was "substantially prejudiced by the district
court's permitting the jury to consider Roach's pleadings
from the Texas [L]itigation as evidence," despite "having

excluded those pleadings as inadmissible hearsay during the presentation of evidence." Cellars challenges Exhibit 601, which was Roach's First Amended Complaint in the Texas Litigation. We hold that, even if there had been any error (and we do not reach that decision here), it was more probably than not harmless. First, the district court instructed the jury that the pleadings were not evidence. There is a "strong" presumption that juries follow instructions. *Escriba v. Foster Poultry Farms, Inc.*, 743 F.3d 1236, 1247 (9th Cir. 2014) (quoting *United States v. Dorsey*, 677 F.3d 944, 955 (9th Cir. 2012)). Second, Cellars's own expert provided evidence that Exhibit 601 was superseded and irrelevant. He testified that a subsequent Texas petition—the Fifth Amended Petition—triggered Cellars's efforts to "quiet title." Most importantly, as we discuss above, the district court took judicial notice of Cellars's original complaint and published it to the jury. In that complaint, Cellars admitted that it brought this suit in response to the Texas Litigation. Because the jury saw Cellars's admissions, it is unlikely that the suppression of Roach's Texas pleadings would have caused the jury to reach a different verdict. Additionally, there was considerable evidence, discussed above, that demonstrates that the gravamen of Cellars's claim for breach of fiduciary duty *was* the filing of the Texas Litigation. So it was more probable than not that the jury would have reached the same verdict. *See Boyd v. City & County of San Francisco*, 576 F.3d 938, 949 (9th Cir. 2009) (finding harmless error due to the "overall strength" of the evidence).

### c. *Whether the district court erred in denying equitable relief.*

Cellars's last argument on appeal asks us to reverse the district court's denial of "proceed[ing] with the ongoing

bench trial portion to determine whether Cellars is entitled to equitable disgorgement in the form of the substantial value of the wine paid to Roach as part of the unenforceable agreement." We review for abuse of discretion the district court's decision to deny equitable relief. *Appling v. State Farm Mut. Auto. Ins. Co.*, 340 F.3d 769, 780 (9th Cir. 2003). Because the district court has broad discretion to deny Cellars's request for equitable relief, *see Faberge, Inc. v. Saxony Prods., Inc.*, 605 F.2d 426, 429 (9th Cir. 1979) (per curiam), and because we see no abuse of discretion, we affirm the district court's denial of equitable relief.

### III.   CONCLUSION

For all these reasons, we **REVERSE** the district court's grant of summary judgment for Cellars in Case No. 23-15862 and **REMAND** to the district court for further proceedings consistent with this opinion. We **AFFIRM** the district court's denial of Cellars's renewed motion for judgment as a matter of law in Case No. 23-15990.[15]

---

[15] The parties shall bear their own costs on appeal.